IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| W.L. GORE & ASSOCIATES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 11-515-LPS-CJB |
| | ) | |
| C.R. BARD, INC. and BARD PERIPHERAL VASCULAR, INC., | ) ) ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

In this action filed by Plaintiff W.L. Gore & Associates, Inc. ("Gore" or "Plaintiff") against Defendants C.R. Bard, Inc. and Bard Peripheral Vascular, Inc. (collectively, "Bard" or "Defendants"), Gore alleges infringement of United States Patent No. 5,735,892 (the "asserted patent" or the "patent-in-suit").[1] Presently before the Court is Bard's Motion for Summary Judgment of No Willful Infringement (the "Motion"). (D.I. 241) The Court recommends that the Motion be DENIED.

### I. BACKGROUND

#### A. Factual Background

The Court incorporates by reference the factual background set forth in its previously-issued Report and Recommendations regarding summary judgment. (*See, e.g.*, D.I. 361, 369, 428, 429, 435)

#### B. Procedural History

---

[1] Gore also originally asserted infringement of U.S. Patent No. 8,221,487, but is no longer asserting that patent. (D.I. 191 at 1-2) It also was asserting infringement of U.S. Patent No. 5,700,285 (the "'285 patent"), but that patent is no longer at issue following the District Court's adoption of the Court's recommendation to grant summary judgment of non-infringement of the patent. (D.I. 405 at 10-11; D.I. 423)

On June 10, 2011, Gore commenced this action. (D.I. 1) On November 29, 2011, this case was referred to the Court by Chief Judge Leonard P. Stark to hear and resolve all pretrial matters, up to and including the resolution of case dispositive motions. (D.I. 20) Briefing on the Motion was completed on November 12, 2014. (D.I. 337) The Court held oral argument on various *Daubert* and summary judgment motions filed by the parties on January 30, 2015. (D.I. 360) A 10-day trial is set to begin on December 7, 2015. (D.I. 362)

## II. STANDARD OF REVIEW

A grant of summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). If the moving party meets this burden, the nonmovant must then "come forward with specific facts showing that there is a *genuine issue for trial*." *Id.* at 587 (internal quotation marks and citation omitted) (emphasis in original). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). During this process, the Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

However, in order to defeat a motion for summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir.

2005) (party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks and citation omitted). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). Facts that could alter the outcome are "material," and a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Id.* at 249-50 (internal citations omitted). A party asserting that a fact cannot be—or, alternatively, is—genuinely disputed must support the assertion either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials"; or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B).

## III. DISCUSSION

Pursuant to 35 U.S.C. § 284, Gore seeks increased damages in this case for Bard's alleged infringement of the asserted patent. (D.I. 64 at ¶ 21) That statute permits such an enhanced award only for "willful" infringement. *See, e.g., In re Seagate Tech., LLC*, 497 F.3d 1360, 1368 (Fed. Cir. 2007) (en banc). In filing the instant Motion, Bard now seeks summary judgment of

3

no willful infringement, arguing that Gore cannot satisfy the objective prong of a willful infringement claim. (D.I. 242 at 8)

In *In re Seagate Tech., LLC*, 497 F.3d 1360 (Fed. Cir. 2007), the United States Court of Appeals for the Federal Circuit set out a two-part test for establishing willful infringement, consisting of objective and subjective prongs. In order to meet the first prong, the plaintiff must show "by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." *Id.* at 1371. The state of mind of the accused infringer is not relevant to the objective prong. *Id.* If the first prong is satisfied, the plaintiff must next establish "that this objectively-defined risk (determined by the record developed in the infringement proceeding) was either known or so obvious that it should have been known to the accused infringer." *Id.* If, however, the first prong cannot be shown, then the Court should not put the issue of willfulness—including the second "subjective" prong—before a jury. *See Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221, 1236 (Fed. Cir. 2011) ("Since *Seagate*, [the Federal Circuit] has required patentees to prove the objective prong of the willful infringement inquiry by clear and convincing evidence *as a predicate to the jury's consideration of the subjective prong*. . . . Should the court determine that the infringer's reliance on a defense was not objectively reckless, *it cannot send the question of willfulness to the jury*, since proving the objective prong is a predicate to consideration of the subjective prong.") (emphasis added).

"[T]he objective prong of *Seagate* tends not to be met where an accused infringer relies on a reasonable defense to a charge of infringement." *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assoc., Inc.*, 682 F.3d 1003, 1005 (Fed. Cir. 2012) (citation omitted); *see also Powell*,

4

663 F.3d at 1236; *Black & Decker, Inc. v. Robert Bosch Tool Corp.*, 260 F. App'x 284, 291 (Fed. Cir. 2008) ("Under this objective standard, both legitimate defenses to infringement claims and credible invalidity arguments demonstrate the lack of an objectively high likelihood that a party took actions constituting infringement of a valid patent."). "When a defense or noninfringement theory asserted by an infringer is purely legal (e.g., claim construction), the objective recklessness of such a theory is a purely legal question to be determined by the judge." *Bard Peripheral Vascular, Inc.*, 682 F.3d at 1007. Even "[w]hen the objective prong turns on fact questions . . . or on legal questions dependent on the underlying facts, as related, for example, to questions of obviousness, the judge remains the final arbiter of whether the defense was reasonable, even when the underlying fact question is sent to a jury." *Id.*

Bard's arguments that summary judgment is appropriate largely focus on the asserted reasonableness of its two primary non-infringement defenses: (1) that it does not infringe because the covering material in its accused stent graft devices is not affixed to the "luminal" and "exterior" surfaces of the stent (as is required by the asserted claims); and (2) that it does not infringe because its accused products do not satisfy the thickness limitation in the asserted claims (that the coverings at issue be "less than about 0.10 mm thick"). (D.I. 242 at 8-12)[2] Bard had

---

[2] In its opening brief, Bard very briefly asserts that the Motion should also be granted due to the objective reasonableness of its arguments that the asserted claims are invalid as anticipated or obvious based on various prior art references. (D.I. 242 at 12-13) The only specific defense that Bard then refers to is a claim that "a combination of references that recently formed the basis for the European Patent Office revoking Gore's foreign European counterpart patent" will be used here to demonstrate that the asserted claims were obvious. (*Id.*) But this particular defense is not one that has been before the Court in a prior summary judgment motion (or otherwise) and Bard provides no further detail in its briefing as to the merits of that defense. (D.I. 292 at 15 (Gore noting that Bard has provided the Court with "no substantive discussion of [this defense]")) And Gore, for its part, disputes what relevance, if any, a prior European Patent Office decision would have on the proceedings here. (*Id.*) In the end, the Court cannot

previously filed motions for summary judgment of non-infringement based on both of these theories. (D.I. 244, 247) In both cases, those motions were denied because the Court (and the District Court) determined that Gore had put forward multi-faceted evidence that raised a genuine issue of material fact as to whether the defenses were well-taken. (D.I. 361, 368, 369, 405)

Of course, because these are defenses as to which both sides can muster documents and testimony in support of their respective position, it may well be that (as Bard asserts) the defenses are objectively reasonable—even if Bard does not ultimately prevail on them. But, as the Court's Report and Recommendations regarding the respective summary judgment motions noted, these defenses are rather fact-specific. Without having the benefit of hearing the relevant lay and expert witness testimony in person, and without then being able to weigh that testimony along with the other evidence presented at trial, the Court cannot readily conclude that the objective prong of the willfulness inquiry should go Bard's way. The District Court will be in the best position to make that decision after having seen any relevant evidence presented at trial.

By way of example, perhaps Bard's strongest argument as to the objective reasonableness of its non-infringement position relates to its defense regarding the "affixing limitation." There Bard argues that the covering material on the accused products "in many places does not even touch the surface of the stent and can freely move relative to the surface of the stent[,]" (D.I. 242 at 9; *see, also, e.g.*, D.I. 248 at 4-5, 9), such that the coverings do not have a secure connection to the stent struts (as is required by the claims). Key to Bard's defense are photographs taken by

---

recommend granting the instant Motion based on the asserted strength of a defense when the moving party has provided the Court with almost no information about that defense.

one of its experts, Mr. Robert Calcote. Mr. Calcote took images of the accused products with a scanning electron microscope ("SEM"); the images presented to the Court do appear to show that in the accused devices there is a small pocket of space between most of the strut surface and the coverings. (D.I. 259, ex. B at ¶¶ 130, 225; *see also* D.I. 260, ex. A at ¶ 139) But Gore, in response, pointed to the testimony of its expert, Dr. Enrique Criado. Dr. Criado suggested that the method that Mr. Calcote used to prepare the stent grafts for photography was deeply flawed. He asserted that Mr. Calcote's use of "an off-the-shelf-wire cutter" to prepare the stents "damaged" the stent grafts' structure, thereby preventing Mr. Calcote from visualizing the cross-section of the accused products as they would appear intact. (D.I. 303, ex. C at 20, 28; D.I. 361 at 20 n.11)

How persuasive will these SEM images be once Mr. Calcote's and Dr. Criado's testimony has been heard? How troubled (if at all) will a fact-finder be about the efficacy of Mr. Calcote's wire-cutting technique, once that technique and the results flowing from it are better explained? And how will the answers to these questions inform the decision not only as to whether Bard infringes the asserted claims, but whether it was objectively reasonable in its belief that it did not infringe? Having not heard the testimony in person, it is hard for the Court to say. And in the absence of clear answers to questions like these, the Court does not possess the kind of conviction it would need to recommend the grant of Bard's Motion. This is one of those circumstances where it seems "most prudent and appropriate" to wait until the record is more fully developed at trial before coming to a conclusion as to the objective reasonableness of Bard's defenses. *Abbott Biotech. Ltd. v. Centocor Ortho Biotech, Inc.*, 35 F. Supp. 3d 163, 182 (D. Mass. 2014); *see also PPC Broadband, Inc. v. Corning Gilbert Inc.*, No. 5:11-cv-761

(GLS/DEP), 2014 WL 347803, at *7 (N.D.N.Y. Jan. 31, 2014).

## IV. CONCLUSION

For the reasons set forth above, the Court recommends that Bard's Motion be DENIED.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. Objections to this Report and Recommendation, if any, are due by **November 23, 2015**. Responses are due by **November 30, 2015**. Alternatively, to the extent the parties jointly agree to complete briefing on objections and responses on a date prior to the **November 25, 2015** pre-trial conference, they should alert the Court to the agreed-upon schedule and submit their filings in accordance with that schedule. In that case, it may be possible for the District Court to resolve the objections at the pre-trial conference. If the parties do not jointly agree to such an alternative briefing schedule, the deadlines set forth above will control. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the district court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the Court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the District Court's website, located at http://www.ded.uscourts.gov.

Because this Report and Recommendation may contain confidential information, it has been released under seal, pending review by the parties to allow them to submit a single, jointly proposed, redacted version (if necessary) of the Report and Recommendation. Any such redacted version shall be submitted no later than **November 23, 2015** for review by the Court, along with a detailed explanation as to why disclosure of any proposed redacted material would "work a

clearly defined and serious injury to the party seeking closure." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994) (internal quotation marks and citation omitted). The Court will subsequently issue a publicly-available version of its Report and Recommendation.

Dated: November 16, 2015

_____
Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE