IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| W.L. GORE & ASSOCIATES, INC., | : | |
| Plaintiff, | : | |
| v. | : | Civil Action No. 11-515-LPS |
| C.R. BARD, INC. and BARD PERIPHERAL VASCULAR, INC., | : | |
| Defendants. | : | |

**MEMORANDUM ORDER**

At Wilmington this **8th** day of **February, 2017**:

Having reviewed the parties' briefing (D.I. 625, 626, 627, 628) relating to Defendants C.R. Bard, Inc. and Bard Peripheral Vascular, Inc.'s ("Bard") motion for attorneys' fees ("Fees Motion") incurred in having to respond to Plaintiff W.L. Gore & Associates, Inc.'s ("Gore") motion for sanctions ("Sanctions Motion"), **IT IS HEREBY ORDERED** that Bard's Fees Motion (D.I. 625) is **GRANTED IN PART**.

1. On December 7, 2015, on the morning that a jury trial on non-damages issues was scheduled to commence in this patent infringement action, Bard represented to the Court that it had recently discovered, from publicly available sources, important documents from Gore's state tax proceedings that were relevant to Gore's claim for lost profits damages and to secondary considerations of non-obviousness. (D.I. 620 at 3-4) One such document that had been submitted by Gore in those tax proceedings was a 2008 Expert Report by David Teece ("Teece Report"), which listed the patent-in-suit (Gore's '892 patent) in a table of "Proud Patent[s]" with a "[r]anking" of "Minor." (D.I. 420, ex. 16 at Table 3; *see also* D.I. 620 at 4) The Court ultimately (and reluctantly) granted a joint request for a continuance of trial after it became clear

that additional discovery relating to this issue was warranted. (D.I. 620 at 4; *see also* D.I. 503 at 34)[1]

2. On January 4, 2016, Gore brought its Sanctions Motion (D.I. 509), claiming that Bard had made "numerous misrepresentations to this Court" with regard to the Teece Report and related documents, and seeking "[s]erious [s]anctions" against Bard – such as the entry of default judgment on liability and the disqualification of Bard's counsel. (D.I. 510 at 3, 17-20) Gore contended that Bard's attorneys had violated several ethical rules in three main ways. First, Gore asserted that the Teece Report had been in Bard's possession since at least August 2009, when Bard's attorney, Steven Cherny, had affirmatively used the Teece Report in litigation between these same parties in federal district court in Arizona, and further asserted that Bard had been deliberately sitting on the Teece Report ever since, only to spring it on this Court at the last minute in order to "blow up" the trial. (*Id.* at 3; *see also* D.I. 620 at 24) Second, Gore argued that Bard's Delaware counsel, Jack Blumenfeld, made misrepresentations to the Court when he stated that Bard had only recently obtained the Teece Report and other documents from publicly available sources. (D.I. 510 at 13; *see also* D.I. 620 at 27) Third, Gore alleged that, in an effort to present to the Court its "'surprise discovery'" story regarding the Teece Report, another Bard attorney, Charles Wineland III, surreptitiously and improperly gained access to sealed documents, including the Teece Report, in the Cecil County Courthouse in Maryland. (D.I. 510 at 9, 16; *see also* D.I. 620 at 28)

3. Bard opposed the Sanctions Motion, characterizing Gore's allegations as a

---

[1] Trial was subsequently rescheduled and is now set to begin on March 1, 2017. (*See* D.I. 613 at 3)

"confected conspiracy theory" amounting to "false accusations against respected members of the Bar," and submitting detailed declarations from Mr. Cherny, Mr. Blumenfeld, and Mr. Wineland (among others). (D.I. 516 at 1; D.I. 517-519) Bard also requested that it be awarded the attorneys' fees it incurred in having to respond to Gore's "unfounded assertions." (D.I. 516 at 3)

4. The Court heard oral argument on Gore's Sanctions Motion on March 17, 2016 (D.I. 553 ("Tr.")), and issued a Memorandum Opinion on July 27, 2016 denying the motion (D.I. 620 at 31). The Court was persuaded by Bard's counsel's declarations, which contained "corroborated" and "entirely plausible" explanations; by contrast, the Court found "Gore's contrary suggestion [of a massive conspiracy by Bard's counsel] . . . entirely implausible." (*Id.* at 26-30) With respect to Bard's request for attorneys' fees, the Court stated that "[t]his may well be a request that should be granted" since "Gore's [Sanctions] Motion leveled serious [but unsupported] accusations of misconduct against highly-experienced attorneys." (*Id.* at 30) The Court ordered additional briefing on the issue (D.I. 621 at 2), which the parties completed on August 10, 2016 (D.I. 625, 626, 627, 628).

5. Although litigants generally bear their own costs of action, when an attorney "multiplies the proceedings in any case unreasonably and vexatiously," he "may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. The Third Circuit has interpreted § 1927 to permit fee awards where "an attorney has (1) multiplied proceedings; (2) in an unreasonable and vexatious manner; (3) thereby increasing the cost of the proceedings; and (4) doing so in bad faith or by intentional misconduct." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 278 F.3d 175, 188 (3d Cir. 2002). Additionally, it is inherent in the court's discretionary

power to award attorneys' fees "when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991) (internal quotation marks and citation omitted). Courts have used § 1927 and their inherent authority to sanction attorneys who file meritless motions. *See, e.g., In re Prosser*, 777 F.3d 154, 157, 162-63 (3d Cir. 2015) (affirming award for attorneys' fees to party opposing "inflammatory submissions"); *In re Elonex Phase II Power Mgmt. Litig.*, 279 F. Supp. 2d 521, 525 (D. Del. 2003) (awarding attorneys' fees to party opposing "facially meritless Rule 60(b) motion").

6. Bard's Fees Motion presents a very difficult decision. On the one hand, the Court credits Gore's counsel's repeated representations that it brought the Sanctions Motion "in complete good faith" and with the belief that the underlying facts should be presented to the Court for its "independent assessment." (D.I. 625 at 1 ("Under the circumstances, we felt it was the right thing to do – as officers of the court and advocates for our client – to bring the matter to the Court for its independent assessment."); *see also* D.I. 627 at 1) The Court can understand how Gore's discovery of Bard's counsel's reliance on the Teece Report in 2009 in the Arizona litigation, and Bard's subsequent use of the same report six years later on the eve of trial in this case, might *initially* give Gore's counsel pause.[2] On the other hand, however, the advancement of serious charges of misconduct involving an alleged conspiracy by multiple attorneys must be supported by *evidence* and not mere suspicion or coincidence – especially when a party decides to file such an attack in Court, leveling potentially career-ending allegations in a public forum.

7. In resolving this close call, the Court finds a number of factors to be particularly

---

[2]In Gore's view, "it seemed like too big a coincidence for the same lawyers to independently discover the same confidential document from the same unusual source in two different cases, and then use that document offensively in both cases." (D.I. 625 at 2-3)

4

pertinent. First, the Teece Report is a ***Gore*** document – and it is a ***Gore document that Gore did not produce*** (until ***after*** Bard found it through its own efforts). One of the shakiest aspects of the implausible theory on which Gore built its Sanctions Motion was the implication that ***Bard's counsel***, Mr. Cherny, simply had to have recalled in the course of this litigation that he had once seen and used the Teece Report in a case between these same parties six years earlier. But if, as Gore has insisted (*see, e.g.*, D.I. 502 at 57-58; D.I. 503 at 19-20; *see also* D.I. 620 at 4 (noting Gore's statement that it did not even search tax cases for relevant documents)), the Teece Report was not sufficiently relevant to the instant case for it to have occurred to anyone associated with Gore even to produce it here, it should not have struck Gore's counsel as unbelievable that Mr. Cherny did not recall the document. As importantly, it cannot be that Mr. Cherny committed the sort of egregious misconduct over which his career should be threatened by having not recalled the document.[3] Even assuming it was fair to make this allegation at first, it should not have been pressed with the vigor with which Gore pursued it after hearing Mr. Cherny's explanation.

8. Second, the manner in which Gore presented its Sanctions Motion did not at all make it appear as if Gore's counsel were solely, or even primarily, interested in presenting potentially troublesome conduct to the Court for its "independent assessment." Instead, it reasonably appeared to Bard and the Court that Gore had decided for itself, from the beginning, that Bard was guilty. In Gore's first communication to Bard on the topic, Gore described

---

[3] *See also* D.I. 620 at 27 ("As Bard emphasizes, the Teece Report was a ***Gore*** document which ***Gore*** failed to locate and produce in this litigation, despite being responsive to Bard's discovery requests asking for documents related to the '892 patent. It is unreasonable for Gore to hold Bard to a higher standard for remembering and finding a Gore document from the Arizona litigation when Gore itself did not (in the relevant time) find and produce the pertinent document.") (internal citation omitted).

5

"numerous statements Bard made to Chief Judge Stark [that]... were false," insisting that there had been "a very serious violation of Bard's duty of candor to the Court." (D.I. 628-1 at 1-2 (Dec. 17, 2015 letter)) And the opening brief Gore filed gave no sense of being written by counsel who were hesitant to make their accusations and were primarily concerned with deterring future misconduct, filled (as it is) with confident assertions of Bard's guilt (*see, e.g.*, D.I. 510 at 3-4, 10-13, 17) and a request for the most severe of sanctions (including judgment against Bard and disqualification of Bard's counsel) (*see id.* at 17-18). For instance, Gore declared in its "Introduction and Summary of Argument" that Bard's explanations are "not plausible" and that "the only realistic explanation for Bard's numerous misrepresentations" is that Bard was pursuing a "deliberate[] plan[]" to "blow up" trial, thereby "caus[ing] a major disruption in this case through direct violations of the ethical rules." (*Id.* at 3-4) As Bard writes, Gore could have instead "raised its concerns by simply laying out the facts – without any inferences – and allowed the Court to decide whether misconduct had occurred" (D.I. 628 at 1), but this is not the path Gore chose.

9. Third, Gore continued to pursue its accusations of serious misconduct even after its receipt and review of Bard's counsel's unrebutted declarations, which provided detailed, entirely credible explanations for their conduct. Indeed, Gore admits in its briefing on the Fees Motion that these declarations provided additional details with regard to the circumstances surrounding Bard's prior use of the Teece Report and Mr. Wineland's experience in Cecil County. (D.I. 625 at 2; D.I. 627 at 2) At that point, a full and thoughtful reassessment of the entire record – unimpaired by hopes of benefitting from the situation by having sanctions imposed on an opponent – should have led Gore's counsel to the conclusion that the Sanctions

Motion should be withdrawn. Instead, Gore seemed to "double-down" on its accusations, insisting that the attorney declarations lacked credibility (*see* D.I. 528 at 3-5; Tr. at 11-12) and continuing to pursue "powerful" sanctions (*see, e.g.*, D.I. 528 at 9-10; Tr. at 24). Gore's continued pursuit consequently required Bard, and the Court, to prepare for a lengthy hearing on the Sanctions Motion, and later for the Court to decide that motion (and now Bard's Fees Motion as well).

10. Thus, pursuant to the Court's inherent authority and § 1927, the Court finds that Gore's conduct following its receipt and review of Bard's counsel's declarations warrants the imposition of sanctions. Those detailed, unrebutted declarations should have made it clear to Gore that there were reasonable explanations for Bard's conduct, and that Gore's accusations did not rest on actual evidence. Therefore, while the Court credits Gore's representations that it *filed* its Sanctions Motion in good faith, it finds Gore's continued aggressive pursuit thereafter of its serious accusations – despite completely unrebutted evidence to the contrary – warrants requiring Gore to reimburse Bard for its reasonable attorneys' fees incurred in connection with opposing the Sanctions Motion from after the date Bard filed its brief in opposition to the Sanctions Motion. *See Skinner v. E.I. du Pont de Nemours & Co.*, Civ. No. 07-384-SLR, 2009 WL 783329, at *1-2 (D. Del. Mar. 25, 2009) (explaining that court can infer bad faith that increased costs of proceedings "where a litigant continues to pursue a claim in the face of an irrebuttable defense") (internal quotation marks and citation omitted). From that point forward (i.e., after January 22, 2016), Gore multiplied the proceedings, in an unreasonable manner, increasing costs, by intentional misconduct.

11. For these reasons, the Court **GRANTS IN PART** Bard's Fees Motion and will

award reasonable attorneys' fees to Bard for the fees it incurred in relation to Gore's Sanctions Motion *after* the filing of its brief in opposition to the Sanctions Motion. The parties shall meet and confer and shall, no later than **February 13, 2017**, submit a proposed order setting forth the timing with which Bard will submit briefing and supporting documentation with respect to the specific amount of attorneys' fees sought, to which Gore will have an opportunity to respond, and for Bard to reply.

                                                HON. LEONARD P. STARK
                                                UNITED STATES DISTRICT COURT