IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| W.L. GORE & ASSOCIATES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 11-515 (LPS) (CJB) |
| | ) | |
| C.R. BARD, INC. and | ) | |
| BARD PERIPHERAL VASCULAR, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' RULE 50(a) MOTION FOR JUDGMENT
AS A MATTER OF LAW OF NO INFRINGEMENT**

OF COUNSEL:

Steven Cherny
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
(212) 446-4800

Edward C. Donovan
KIRKLAND & ELLIS LLP
655 Fifteenth Street, NW
Washington, DC  20005
(202) 879-5000

John L. Strand
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, MA  02210
(617) 646-8000

March 3, 2017

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
mflynn@mnat.com

*Attorneys for Defendants C.R. Bard, Inc. and
Bard Peripheral Vascular, Inc.*

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................1

LEGAL STANDARD ........................................................................................................2

ARGUMENT.....................................................................................................................2

I.        No Reasonable Jury Could Find That The ePTFE Coverings Are "Affixed" To The Stent Surfaces ...........................................................................................3

II.      There Is No Evidence The Accused Products Practice Any Limitation Of The Claims Under The Doctrine Of Equivalents ..............................................7

CONCLUSION...................................................................................................................8

i

# TABLE OF AUTHORITIES

**Page(s)**

*Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*,
    811 F.3d 1334 (Fed. Cir. 2016)............................................................................................7

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*,
    509 U.S. 209 (1993) ............................................................................................................7

*Buskirk v. Apollo Metals*,
    307 F.3d 160 (3d Cir. 2002)................................................................................................2

*MicroStrategy Inc. v. Business Objects, S.A.*,
    429 F.3d 1344 (Fed. Cir. 2005)...........................................................................................2

*Mirror Worlds, LLC v. Apple Inc.*,
    692 F.3d 1351 (Fed. Cir. 2012)...........................................................................................2

*Newell Cos. v. Kenney Mfg. Co.*,
    864 F.2d 757 (Fed. Cir. 1988).............................................................................................4

*Scott v. Harris*,
    127 S. Ct. 1769 (2007)........................................................................................................5

*Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*,
    655 F.3d 1364 (Fed. Cir. 2011)...........................................................................................2

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
    520 U.S. 17 (1997) ..............................................................................................................2

i

## INTRODUCTION

Defendants C.R. Bard, Inc. and Bard Peripheral Vascular, Inc. move under Fed. R. Civ. P. 50(a) for judgment as a matter of law of non-infringement.  Gore has the burden to show that Bard "affix[es]" the ePTFE coverings in the accused Flair and Fluency Plus products to the surfaces of the stent—a burden Gore has not met.  The primary "evidence" Gore relies upon is testimony from its expert and a former Bard employee that the coverings are held to the stent, rather than sliding off the bare metal stent.  But the mere fact the coverings are connected to the stent generally is not sufficient as a matter of law to establish the coverings are secured to the *surfaces* of the stent as the claims require.  Indeed, the testimony of Gore's expert is entirely irrelevant because he did not identify in his testimony the accused products for which his affixation opinion applies; all his testimony establishes is that he visually inspected some unknown device and determined by looking at it that the stent would not slip away from the stent.  Gore also leans heavily on evidence that the coverings are bonded together through the openings in the stent, insinuating that those coverings must therefore also be affixed to the surfaces of the stent.  The Court rejected that argument once before, and it has become no more persuasive through repetition.  Gore's failure of proof is ultimately unsurprising.  As the testimony from Scott Randall established without dispute, Bard deliberately creates pockets between the coverings and the stent that prevent those coverings from affixing to the stent surfaces.

Gore separately has not met its burden to establish infringement under the doctrine of equivalents.  That doctrine requires testimony specifically explaining won a limitation-by-limitation basis how the accused products and the claimed invention are insubstantially different.  This almost invariably requires a function-way-result analysis.  Gore did not present such an analysis, or even mention the doctrine of equivalents, during its case.  Indeed, it chose to not even call its expert witness who previously offered opinions under the doctrine of equivalents.

## LEGAL STANDARD

Judgment as a matter of law is appropriate where "there is insufficient evidence from which a jury reasonably could find liability." *Buskirk v. Apollo Metals*, 307 F.3d 160, 165 (3d Cir. 2002); Fed. R. Civ. P. 50(a). "To prove infringement, a plaintiff must prove the presence of *each and every* claim element or its equivalent in the accused method or device." *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 655 F.3d 1364, 1378 (Fed. Cir. 2011) (emphasis added). If "even one claim limitation is missing or not met, there is no literal infringement." *MicroStrategy Inc. v. Business Objects, S.A.*, 429 F.3d 1344, 1352 (Fed. Cir. 2005). Although a device that does not literally infringe may nonetheless infringe under the doctrine of equivalents, equivalence is not easily shown. A claim is infringed under the doctrine of equivalents only if an equivalent to the missing limitation existed in the accused device; showing the accused device is equivalent "to the invention as a whole" is not enough. *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997). To establish equivalence, Gore must show that the "difference between a given limitation in the asserted claim and the corresponding element in the accused device is insubstantial," meaning the element "performs substantially the same function in substantially the same way to obtain substantially the same result." *Mirror Worlds, LLC v. Apple Inc.*, 692 F.3d 1351, 1357 (Fed. Cir. 2012) (quotation marks omitted).

## ARGUMENT

Gore has the burden of proof to show that the accused products practice each and every limitation of the asserted claims. *See Microstrategy*, 429 F.3d at 1352. But it presented no testimony from any witness knowledgeable about the Court's claim construction that proved up all elements of the asserted claims. Gore presented no evidence from Dr. Enrique Criado, who up until trial had been Gore's primary infringement expert, and Dr. Gorman admitted he did not provide any opinion on infringement. *See* Trial Tr. at 452:17-19. Gore instead attempted to prove its

2

infringement case primarily through a lay witness, Scott Randall, who knows nothing about the Court's constructions. His testimony concerning whether the Bard products have a stent, for example, therefore used that term colloquially rather than applying the precise definition this Court adopted—a construction Gore sought so that it could exclude certain types of prior art stents from the scope of the claims. *See* D.I. 405 at 4-5. The most glaring failure of proof, however, is on the affixation limitation. The absence of any evidence establishing Bard's accused products practice that limitation, and the lack of any testimony applying the Court's claim construction to link the evidence to the claims, justifies judgment as a matter of law in Bard's favor.

## I.    No Reasonable Jury Could Find That The ePTFE Coverings Are "Affixed" To The Stent Surfaces

Each of the asserted claims of the '892 patent requires an ePTFE covering that is "affixed" to **both** the exterior and luminal surfaces of the stent. *See* PTX-1 cl. 32, 40. Under the Court's construction, this claimed affixation requires that "the covering(s) must contact the ***stent surface***, and must be secured to the ***stent surface***." D.I. 361 at 14 (emphasis added); D.I. 368; D.I. 755 at 23. In other words, the coverings must be securely connected to the exterior and luminal surfaces of the stent such that the coverings cannot move freely relative to those surfaces. D.I. 361 at 14.

Gore did not introduce ***any evidence*** that the coverings in the accused Flair and Fluency Plus devices are affixed to either surface of the stent. Gore presented no evidence from Dr. Enrique Criado, who up until trial had been Gore's primary infringement expert. Gore's other expert, Dr. Gorman, never analyzed whether the coverings are affixed to the stent surfaces. *See* Trial Tr. 431:10-434:9. Rather, he offered a "macroscopic total device level assessment" that "the covering is secured to the stent." *Id.* at 433:5-7; *see also id.* at 432:8-10 ("affix the covering to the stent"), 434:7-9 ("the covering is secured to the stent"), 437:20-22 ("I believe all the coverings that I

3

examined were secured or affixed to the stent struts").[1]  An opinion that the coverings are generally held to the stent—meaning the coverings cannot slide off the stent—is not evidence that the graft material is secured to the surfaces of the stent.  Neither is Dr. Gorman's opinion that the coverings "make contact with the stent struts [such] that you can actually see the stent struts through the covering." *Id.* at 433:10-12.  The Court's construction requires more than contact. D.I. 361 at 13-14 (holding the claims "require a relationship amounting to more than mere touching").  In addition,, Dr. Gorman's vague testimony that the coverings are "affixed to the stent struts" does not establish that the coverings are attached to ***both*** the inner and outer surfaces as the claims require. Trial Tr. at 437:20-22.  He does not mention that claim requirement in his testimony.

Dr. Gorman also offered his affixation opinion without once identifying which products his opinions cover.  Trial Tr. 431:10-437:22.  The words "Flair" and "Fluency Plus" do not appear once in that portion of his testimony.  His testimony that "all the coverings that I examined were secured or affixed to the stent struts" accordingly could not support a jury verdict that the coverings are affixed for either product.

The other testimony and evidence Gore introduced likewise falls far short of establishing that Bard secures the coverings in its devices to the surfaces of the stent.  Gore points to Bard's "stent graft lamination procedure," which "laminates the wrapped stent" to "provid[e] a bond ***between the inner and outer graft material***."  Trial Tr. 577:19-578:7 (emphasis added).  As Bard's head of Research and Development, Scott Randall, testified, however, that process has "[n]othing to" do with "the stent surface." *Id.* at 611:3-10 ("It is all about the ePTFE sticking to the ePTFE."); *see also id.* at 577:19-22, 578:15..  Gore has not introduced any evidence suggesting otherwise.  *See Newell Cos. v. Kenney Mfg. Co.*, 864 F.2d 757, 767 (Fed. Cir. 1988) (holding a jury cannot "discard

---

[1]  By "macroscopic total device level assessment," Dr. Gorman meant "I just visually looked at it."  Trial Tr. 433:3-12.

probative admissions").

Gore also relies on Fluency Plus design input summary document that identifies "no disruptions (i.e. flaps, pockets, holes, particle detachment) leading to adverse clinical events" as a desirable "ePTFE Deployment Characteristics." PTX-765 at PTX-0765-0014. Again, Mr. Randall testified without contradiction that the document is referring to pockets within "the luminal surface" itself. *See* Trial Tr. 583:22-584:25 ("It has nothing to do with the pockets around the stent."). The document itself makes that clear, as the "[c]omment" under the statement Gore relies upon states "[O]n the inner luminal surface, material disruptions have the potential to contribute to flow turbulences and over time possibly lead to thrombosis." PTX-765 at PTX-0765-0014. No reasonable juror could read the document to instead establish the absence of pockets around the stent surface as an "essential" design features, especially given the photos of actual Bard devices with pockets around the surface of the stent. DTX-1598 at 8774, 8776; *cf. Scott v. Harris*, 127 S. Ct. 1769, 1776 (2007) (holding a court "should have viewed the facts in the light depicted by the videotape.").

Lacking any documents that support its affixation case, Gore relies on the testimony of John Reviere, a former Bard employee. Trial Tr. 391:20-25. None of Mr. Reviere's testimony provides any evidence that Bard secures the coverings on its products to the stent surfaces. Mr. Reviere primarily testified that the stent is "covered," "encapsulated," "fully encapsulated," or "encased" in ePTFE. *See* Trial Tr. 393:16-394:11, 395:24-396:3. The Court's claim construction establishes merely covering the stent is not enough, D.I. 361 at 13, and neither is encapsulating or encasing the stent in ePTFE. Indeed, it is undisputed that encapsulation is the word Bard uses to describe the process by which it creates pockets between the coverings and the stent surfaces. *See* Trial Tr. at 610:13-20. To be sure, Mr. Reviere also testified that "th[e] layers of ePTFE are affixed to the stent such that they don't separate from the stent when it's in operation." *Id.* at 396:18-21. But that

5

statement merely concedes that the coverings do not slide off the stent.  It says nothing about whether the coverings *are secured to the stent surfaces* or separated from that surface by pockets.

That leaves Gore's apparent theory that bonding the two layers of ePTFE together through the stent is enough to establish infringement.  The Court already rejected that argument.  As Magistrate Judge Burke explained, in a Report & Recommendation this Court adopted, two coverings bonded together are not affixed to the surface of the stent unless those coverings "contact the exterior and luminal surfaces of the stent in a manner *providing a secure connection with the stent surface*."  D.I. 361 at 14 (emphasis added); D.I. 368.  Gore has not introduced any evidence that such a connection exists.

This failure of proof is understandable.  The evidence shows that Bard *intentionally avoids* securing the ePTFE coverings in the accused Flair and Fluency Plus products to either surface of the stent.  Trial Tr. 623:21-624:3, 687:13-20.  Instead, Bard encapsulates the stent between two layers of ePTFE during its manufacturing process to create pockets around the stent struts.  *Id.*.at 622:11-624:20; 644:1-646:2, 647:2-7; DTX-629 at 612.  As part of this "encapsulation process," Bard places the bare metal stent and the ePTFE base tubes into an oven, which heats the base tubes beyond their "crystalline melt point," resulting in the tubes bonding to each other through the opening in the stents.  Trial Tr. at 644:1-3; 645:13-24; *see also* 610:13-61:2.  But the  ePTFE layers do not bond to the "highly polished metal stent surfaces."  *Id.* at  645:13-24 ("[I]t's not going to stick to the metal at that temperature."); *see also id.* 608:20-22; 624:21-625:3.  That is by design.  *See id.*  at 687:13-20 ("[W]e purposely don't bond there.").  Allowing the unsecured ePTFE layers to move relative to the surfaces of the stent adds needed flexibility to the Flair and Fluency Plus devices.  *Id.* at 609:2-4; 687:13-20.  Without that flexibility, the accused devices would not properly expand after implantation.  *Id.* at 624:23-625:11, 679:1-4.

Images Bard created in the ordinary course of business confirm pockets exist between the

6

ePTFE layers and the stent struts. *See* DTX-1598 at 8774, 8776. One of those images, a high-resolution SEM image of a Flair device, appears on a slide with the caption "'pockets' within bonded ePTFE allow stent expansion" and arrows pointing to the clearly visible pockets between the coverings and the stent surfaces. DTX-1598 at 8774; Trial Tr. 675:15-677:8, 678:18-24. The other image of a stent graft explanted from a pig shows the pockets remain even after the devices are deployed within a vessel. DTX-1598 at 8774; Trial. Tr. 677:15-678:22. Gore cannot dispute that those images demonstrate pockets exist—and therefore the ePTFE coverings are not affixed to both stent surfaces—in the accused devices because Dr. Gorman did not consider those images when forming his opinion. Trial Tr. at 440:15-442:12; *see also Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993) ("[W]hen indisputable record facts contradict or otherwise render [an expert] opinion unreasonable, it cannot support a jury's verdict."). Nor does Gore have any evidence to dispute Mr. Randall's testimony that a person could "pinch the covering" and "pull it up away from the surface of the stent," Trial Tr. at 575:19-25—direct proof that that the coverings on the accused devices are not securely connected to the stent surfaces.

## II. There Is No Evidence The Accused Products Practice Any Limitation Of The Claims Under The Doctrine Of Equivalents

Separate and apart from Gore's failure to introduce evidence that Bard affixes the coverings in the accused devices to the stent surfaces, Gore also has not shown that Bard infringes any limitation of the '892 patent under the doctrine of equivalents. "A patentee must establish equivalency on a limitation-by-limitation basis by particularized testimony and linking argument." *Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*, 811 F.3d 1334, 1342 (Fed. Cir. 2016). Gore offered *no* testimony on the doctrine of equivalents. Its only witness with an opinion under the doctrine of equivalents, Dr. Criado, did not testify. The Court should therefore grant judgment as a matter of law that Bard does not infringe under that doctrine, thereby eliminating that issue from the case.

## CONCLUSION

For the foregoing reasons, the Court should grant JMOL of non-infringement.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*

Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
mflynn@mnat.com

*Attorneys for Defendants C.R. Bard, Inc. and
Bard Peripheral Vascular, Inc.*

OF COUNSEL:

Steven Cherny
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Edward C. Donovan
KIRKLAND & ELLIS LLP
655 Fifteenth Street, NW
Washington, DC 20005
(202) 879-5000

John L. Strand
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, MA 02210
(617) 646-8000

March 3, 2017

8

## CERTIFICATE OF SERVICE

I hereby certify that on March 3, 2017, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on March 3, 2017, upon the following in the manner indicated:

Adam W. Poff, Esquire                                             *VIA ELECTRONIC MAIL*
Pilar G. Kraman, Esquire
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE  19801

James Poradek, Esquire                                           *VIA ELECTRONIC MAIL*
Kevin Wagner, Esquire
Katherine S. Razavi, Esquire
Lucas J. Tomsich, Esquire
Lauren J. Frank, Esquire
Timothy Sullivan, Esquire
Theodore M. Budd, Esquire
Elizabeth Cowan Wright, Esquire
David R. Merritt, Esquire
Chad Drown, Esquire
FAEGRE BAKER DANIELS LLP
2200 Wells Fargo Center
90 South 7th Street
Minneapolis, MN  55402

*/s/ Michael J. Flynn*

_____
Michael J. Flynn (#5333)